UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JACK PENTZ,

                Petitioner,

vs.                        Case No.  2:09-cv-687-FtM-29DNF
                            Case No.  2:02-cr-78-FtM-29DNF

UNITED STATES OF AMERICA,

                Respondent.
_____

## OPINION AND ORDER

This matter comes before the Court on petitioner Jack Pentz's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody (Cv. Doc. #1; Cr. Doc. #236)[1] filed on October 16, 2009.  The United States filed its Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 on January 19, 2010.  (Cv. Doc. #10.)  Petitioner thereafter filed a Reply on April 9, 2010.  (Cv. Doc. #13.)  For the reasons set forth below, the motion is denied.

**I.**

Jack Pentz (petitioner or Pentz) and his partner Laurie Smith (Smith) formed Waterford Mortgage Corporation (WMC) in 1991 to broker residential mortgage loans for several lenders.  WMC entered

---

[1]The Court will make references to the dockets in the instant action and in the related criminal case throughout this opinion. The Court will refer to the docket of civil habeas case as "Cv. Doc.", and will refer to the underlying criminal case as "Cr. Doc."

into a series of lending agreements with investor Ronald L. Brown (Brown) in which Brown agreed to provide WMC with a line of credit, which eventually reached $15 million.  Smith died in 1998, and Pentz exercised an option to purchase WMC from her estate and formed a new corporation, First Mortgage of Naples, d/b/a/ Waterford Mortgage Bank (First Mortgage).

Civil litigation in state court filed by Brown preceded the federal indictment in this case.  A state court-appointed Receiver took control of WMC and First Mortgage.  In due course the Receiver cooperated with law enforcement authorities in the investigation of petitioner.

A Superceding Indictment alleged that beginning on or about January 1996, Pentz and others devised a scheme to defraud Brown by obtaining, under false pretenses, monies that were intended by Brown to fund and to be secured by residential mortgages. The evidence at trial established that WMC defrauded Brown by assuring him that the line of credit he provided was soundly secured by specific real estate mortgages held by WMC, when in fact such mortgages had already been resold to other unrelated financial institutions, and by providing Brown with fictitious mortgages. The government also alleged that, unknown to Brown, Pentz lost approximately $2.3 million in overseas investments in a foreign bond trading investment, and that between 1998 and 2000 Pentz used WMC funds for vacations, plastic surgery, jewelry, clothing,

appliances, animal care, dentistry and other personal expenditures. The Court adopts the more complete summary of the facts as set forth in the government's Memorandum.  (Cv. Doc. #10, pp. 3-12.)

Following a jury trial, Pentz was found guilty of two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts One and Three); two counts of engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. § 1957 (Counts Four and Six); and two counts of money laundering in violation of 18 U.S.C. § 1956 (Counts Seven and Eight).  Pentz was found not guilty of Counts Two and Five.  Pentz was sentenced to 60 months imprisonment on counts one and three; 120 months on counts four and six; and 151 months on counts seven and eight, all to run concurrently, and received three years of supervised release and was ordered to pay $5,285,779.00 in restitution.

Pentz filed a direct appeal.  The Court of Appeals affirmed his convictions, but vacated and remanded for re-sentencing in light of an error involving an enhancement under the Sentencing Guidelines.  United States v. Pentz, 202 F. App'x 411 (11th Cir. 2006).  Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied.  Pentz v. United States, 549 U.S. 1357 (2007).

At re-sentencing, petitioner was sentenced to a total of 120 months, which was affirmed on appeal.  United States v. Pentz, 315 F. App'x 101 (11th Cir. 2008).  Petitioner's petition for a writ of

*certiorari* to the United States Supreme Court was denied. <u>Pentz v.</u>
<u>United States</u>, 129 S. Ct. 426 (2008). Pentz then filed this timely
§ 2255 motion.

## II.

While petitioner identifies nine specific issues, his
pleadings must be read liberally because of his *pro se* status.
Additional issue are embedded in his motion. The Court construes
the motion, memorandum, and reply to set forth the claims discussed
below.

## (1) Unlawful Search and Seizure by State Court-Appointed Receiver:

Petitioner asserts that in April, 2000, Brown initiated civil
litigation against First Mortgage and Pentz in state court and
caused a Receiver (Jerry McHale) to be appointed to take control of
WMC. Petitioner states that on April 21, 2000, the Receiver seized
the offices of First Mortgage as well as books and records on the
premises, and began to investigate and search the records. A state
court order on June 5, 2000, appointed McHale as receiver over
First Mortgage. Evidence seized or observed by the Receiver was
eventually provided to federal agents and ultimately introduced as
evidence in petitioner's trial. Petitioner asserts that the
Receiver intentionally and in bad faith overstepped his authority
by seizing and examining documents beyond the scope of the order(s)
of appointment, thereby unlawfully seizing the documents.
Petitioner alleges that his Fourth Amendment rights were violated

by the search and seizure of the Receiver, and were further violated by the introduction of the unlawfully obtained evidence at trial.  (Cv. Doc. #1, pp. 16-18, 21-23; Doc. #13, pp. 3-6.)[2]

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures..." Fourth Amendment rights are implicated only if conduct of the government infringed upon an expectation of privacy that society is prepared to consider reasonable. O'Connor v. Ortega, 480 U.S. 709, 715 (1987); United States v. Jacobsen, 466 U.S. 109, 113 (1984).  Since the Fourth Amendment is only applicable to actions undertaken by the government, it does not apply to searches or seizures conducted by private individuals. United States v. Jacobsen, 466 U.S. at 113-14; United States v. Ford, 765 F.2d 1088, 1089-90 (11th Cir. 1985). If a private individual acts as an instrument or agent of the government, however, the Fourth Amendment is fully applicable. Skinner v. Ry. Labor Execs. Ass'n, 489 U.S. 602, 614 (1989); Ford, 765 F. 2d at 1090.  Thus, the rule is that "[a] search by a private person does not implicate the Fourth Amendment unless he acts as an instrument or agent of the government." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003).  To determine whether a private person should be considered an agent of the government, a

---

[2]The page numbers cited are the page numbers as recorded on the upper right hand corner of the docketed documents, which are not necessarily the page numbers on the bottom of the pages.

court looks primarily to two factors: "(1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Steiger, 318 F.3d at 1045. Additionally, "a police search following an unsolicited private search does not constitute a search under the Fourth Amendment as long as the search is confined to the same scope as the initial private search." United States v. Garcia-Bercovich, 582 F.3d 1234, 1238 (11th Cir. 2009)(citing United States v. Bomengo, 580 F.2d 173, 175 (5th Cir. 1978)).

In this case, the Receiver was appointed by the state court for a private party and was not acting as a government agent when he searched and seized the items at issue.  The Receiver was pursuing his own goals and objectives in connection with the private civil litigation in making the seizure of documents and the searches of the records on the business premises.  Subsequently cooperating with the government subpoenas and providing documents to government agents does not render the Receiver's conduct to have been that of an agent of the federal government.  The Receiver was acting as a private person appointed by a state court in a private civil proceeding, not a government agent in a criminal investigation, when he engaged in the seizures and searches at issue in this case.  A law enforcement officer can lawfully request, without obtaining a search warrant, a receiver to turn

over property the receiver has obtained during the course of his receivership. <u>United States v. Gray</u>, 751 F.2d 733, 737 (5th Cir. 1985); <u>United States v. Setser</u>, 568 F.3d 482, 490-91 (5th Cir. 2009). Accordingly, neither the seizure and search by the Receiver nor the delivery of the items to the government agents, nor the introduction of the items as evidence at trial, violated the Fourth Amendment.

**(2) Ineffective Assistance of Counsel Regarding Receiver Conduct:**

Petitioner argues that both the evidence and testimony based upon these Fourth Amendment violations should have been the subject of objections by his attorney at trial, implying a claim of ineffective assistance of trial counsel for failing to do so. (Cv. Doc. #1, pp. 21-22.) In his Reply, petitioner specifically argues that he received ineffective assistance of counsel because his attorney failed to file a motion to suppress. (Cv. Doc. #13, p. 3.)

The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). "To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." <u>Zakrzewski v. McDonough</u>, 455 F.3d 1254, 1260 (11th Cir. 2006)(citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986)).

Petitioner's argument concerning the unlawful seizure and search by the Receiver is without merit, as discussed above. An attorney does not provide ineffective assistance of counsel by failing to pursue or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir. 1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992). Accordingly, petitioner fails to establish either of the <u>Strickland</u> prongs in this case.

**(3) <u>Brady</u>, <u>Giglio</u>, Rule 16 Violations:**

Petitioner asserts that the United States failed to comply with its obligations under Fed. R. Crim. P. 16, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). Petitioner asserts that the defense was not provided with a copy of all the information provided by the Receiver and obtained from petitioner's computers, despite the computer files being

entered into evidence (Cv. Doc. #1, p. 18); that the government violated <u>Giglio</u> by not disclosing interviews with Nicole Young (Cv. Doc. #1, pp. 30-31); and that Exhibit 72 was never provided to his attorney and was admitted over objection at trial. (Cv. Doc. #1, pp. 32-37; Doc. #13, p. 13.)   Petitioner also argues that the government had the duty to preserve the evidence seized by the Receiver, which was not done.   (Cv. Doc. #1, pp. 34-35.) Petitioner also asserts a <u>Brady</u> violation in connection with a series of e-mail communications, business records, and computer records (Cv. Doc. #1, pp. 36-37; Doc. #13, pp. 11-15) and that there were specific instances of misconduct by McDowell that should have been disclosed because they constituted specific acts of collateral impeachment. (Cv. Doc. #1, pp. 44.)

    "[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." <u>Hammond v. Hall</u>, 586 F.3d 1289, 1305 (11th Cir. 2009)(quoting <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)). "A <u>Brady</u> violation has three components: '[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'" <u>Id.</u> (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)). "A <u>Giglio</u> claim involves an aggravated type of <u>Brady</u> violation in

which the suppression of evidence enabled the prosecutor to put before the jury what he knew was false or misleading testimony, [ ] or allowed the prosecutor himself to make a false statement to the jury [ ].  The testimony or statement elicited or made must have been a false one." Hammond, 586 F.3d at 1306-07 (citations omitted.)  A Rule 16 violation "is reversible error only when it violates a defendant's substantial rights." United States v. Camargo-Vergara, 57 F.3d 993, 998 (11th Cir. 1995).  "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." Id. at 998-99.

Having reviewed the record, the Court finds that petitioner has not established violations of Brady, Giglio, or Rule 16, and that he has not shown prejudice to his substantial rights.  After consideration of each of these items of evidence in the context of the case as presented to the jury, the Court finds no reasonable probability that the result would have been different with their disclosure.

**(4) Admission of Exhibit 72, Failure to Grant Continuance:**

Petitioner argues that the district court erred in admitting Government's Exhibit 72 over objection and not granting a continuance.  (Cv. Doc. #1, pp. 33, 35-36.)  The admission of evidence is committed to the sound discretion of the trial court.

United States v. DuBose, 598 F.3d 726, 731-32 (11th Cir. 2010).
Similarly, whether to grant a continuance is also within the
discretion of the trial court.  United States v. Valladares, 544
F.3d 1257, 1261 (11th Cir. 2008).  Petitioner has not established
that either decision was an abuse of discretion under the
circumstances set forth in the record.

**(5) Ineffective Assistance of Counsel:**

Petitioner argues that he received ineffective assistance of
counsel when his trial attorney failed to retain a computer expert
(Cv. Doc. #1, p. 37), and his appellate attorney failed to raise
the issue of the admission of Exhibit 72 and the issue of failure
to preserve evidence on direct appeal.  (Cv. Doc. #1, pp. 33, 35.)

Petitioner has failed to demonstrate that failure to obtain a
computer expert constituted either deficient performance or
resulted in prejudice.  Therefore, petitioner has failed to
establish either prong of Strickland.

The same deficient performance and prejudice standards apply
to appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285-86
(2000); Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000).  If the
Court finds there has been deficient performance, it must examine
the merits of the claim omitted on appeal.  If the omitted claim
would have had a reasonable probability of success on appeal, then
the deficient performance resulted in prejudice.  Joiner v. United
States, 103 F.3d 961, 963 (11th Cir. 1997).  Non-meritorious claims

which are not raised on direct appeal do not constitute ineffective assistance of counsel.  Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).  As discussed above, the decision to admit evidence is a matter within the discretion of the trial court, and there was no reasonable probability of success on the merits for this issue or the issue of the government's duty to preserve evidence obtained by the Receiver.  Thus, petitioner has not established ineffective assistance of either his trial counsel or his appellate attorney.

**(6) Failure to Obtain Search Warrant:**

Petitioner argues that the government agents failed to obtain a search warrant to search his personal property, computer files, and computers which were improperly seized by the Receiver. Petitioner argues that even if the Receiver had the authority to seize the corporate property, the Receiver had no authority to search and seizure of petitioner's personal property. Additionally, petitioner asserts the government could not search for and obtain deleted computer files given by the Receiver without a search warrant.  (Cv. Doc. #1, pp. 25-28; Doc. #13, pp. 6-9.)

These issues are without merit.  As discussed above, the Receiver was not a government agent when he seized and searched the various computers and documents, and therefore his conduct did not itself violate the Fourth Amendment and is not attributed to the federal agents.  Having properly received the items, the agents

could inspect them without a search warrant.  Additionally, as the government points out (Cv. Doc. #10, pp. 14-16), the agent did obtain a search warrant for the laptop computer.

**(7)  Intrusion Into Attorney-Client Privilege:**

Petitioner asserts that the government intruded into his attorney-client relationship when it viewed materials contained on a laptop computer seized in 2002 by the Receiver.  Petitioner filed a motion to dismiss based upon this alleged intrusion into the attorney-client relationship, which was denied by the district court.  (Cv. Doc. #1, pp. 18-19.)

Petitioner also alleges that a second intrusion into his attorney-client privilege occurred when a civil attorney he retained hired a certified public accountant (CPA) regarding petitioner's concern over his tax situation.  Petitioner asserts that the CPA was retained primarily for the purpose of filing personal tax returns and sorting out corporate tax issues as they related to his personal tax returns.  Petitioner provided documents and information to the civil attorney, who in turn provided them to the CPA.  Petitioner asserts a continuing attorney-client privilege in the information.  Petitioner states that the CPA provided various documents to government agents without a search warrant and the government introduced them at trial as Exhibits 40A and B. Conversations between the civil attorney and the CPA were also admitted at trial.  Petitioner argues that this violated his Fourth

Amendment rights, his attorney-client privilege, his due process
rights, and his right to effective assistance of counsel.  (Id. at
19-20, 28-29; Cv. Doc. #13, pp. 9-11.)

The alleged interferences with counsel were the subject of an
evidentiary hearing before the magistrate judge, a Report and
Recommendation (Cr. Doc. #66), and an Order (Cr. Doc. #72).  The
Court finds that none of petitioner's rights were violated by the
events relating to this issue.

Additionally, under federal law, there exists no confidential
accountant-client privilege, Couch v. United States, 409 U.S. 322,
335 (1973) or accountant work-product privilege, United States v.
Arthur Young & Co., 465 U.S. 805, 817 (1984)[3].  In In re Grand Jury
Investigation (Schroeder), 842 F.2d 1223 (11th Cir. 1987), the
Court discussed whether statements made to an accountant/attorney
who prepared a client's tax return were protected by the attorney-
client privilege.  The Court stated in pertinent part:

> The attorney-client privilege attaches only to
> communications made in confidence to an attorney by that
> attorney's client for the purposes of securing legal
> advice or assistance.  Courts generally have held that
> the preparation of tax returns does not constitute legal
> advice within the scope of that privilege.  We agree with
> the majority rule.  Admittedly, the preparation of a tax
> return requires some knowledge of the law, and the manner
> in which a tax return is prepared can be viewed as an
> implicit interpretation of that law.  Nevertheless, the

---

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.
1981) (en banc) the Eleventh Circuit adopted as binding precedent
all the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

> preparation of a tax return should not be viewed as legal
> advice.  If a professional accountant prepares a tax
> return, his client cannot invoke any privilege, for there
> is no accountant-client privilege under federal law.
> Couch v. United States, 409 U.S. 322, 335, 93 S. Ct. 611,
> 619, 34 L. Ed. 2d 548 (1973).  A taxpayer should not be
> able to invoke a privilege simply because he hires an
> attorney to prepare his tax returns.  Thus, any
> information [the client] transmitted to [the
> attorney/accountant] for the purpose of preparing his tax
> returns, including the sources of his income, is not
> privileged information.

In re Grand Jury, 842 F.2d at 1224-25 (citations and quotations
omitted.).  Additionally, disclosure of information in a tax return
waives the privilege not only to the disclosed data but also as to
the details underlying that information.  United States v. Davis,
636 F.2d 1028, 1043 n.18 (5th Cir. 1981); see also In re Grand
Jury, 842 F.2d at 1225-26.  This is not to say that no legal advice
on tax matters can be privileged.  "Obviously a lawyer who prepares
a tax return can provide legal advice on tax matters unrelated to
the preparation of that return.  Such advice falls within the scope
of the attorney-client privilege.  Also the lawyer might provide
legal advice on non-tax matters.  Such advice falls within the
scope of the attorney-client privilege as well."  In re Grand Jury,
842 F.2d at 1225.

The testimony in this case was that Exhibits 40A and 40B were
documents used to prepare petitioner's individual tax returns.
There was no violation of the attorney-client privilege, or any of
the rights asserted by petitioner.

**(8) Ineffective Assistance of Counsel:**

Petitioner also asserts, in a single sentence, that the failure of his attorney to raise the issues regarding the Fourth Amendment and interference with his attorney-client privilege on direct appeal constituted ineffective assistance of counsel. (Cv. Doc. #1, p. 29.)   As discussed above, the same deficient performance and prejudice standards apply to appellate counsel. Petitioner has failed to satisfy either prong of <u>Strickland</u> as to these issues.

**(9) Compulsory Process:**

Petitioner alleges that his right to compulsory process was violated when government agents intimidated a witness to prevent her from testifying at trial.  Petitioner asserts "on information and belief" that Nicole Young was threatened with felony tax charges if she testified at trial, and that she would have provided exculpatory testimony and impeachment testimony against the government witnesses Cathy Fraser and Tonya Martin. (Cv. Doc. #1, pp. 29-31; Cv. Doc. #13, p. 11.)

The records of this court establish that Nicole Young pled guilty to a one count Indictment charging the felony offense of filing of a false individual income tax return.   Young was represented by retained counsel, and a Plea Agreement attested to the voluntariness of the guilty plea, her agreement to testify, and the lack of any exculpatory or impeachment testimony.   Case No.

-16-

2:03-cr-48-FTM-29.  Petitioner has failed to establish any basis for his claim.

**(10) Government's Failure to Correct False Testimony:**

Petitioner asserts that government witnesses gave false testimony which the prosecutor knew but failed to correct, and improperly attempted to bolster the witness's credibility, in violation of his due process rights.  Specifically, petitioner asserts that government witness Eugene McDowell (McDowell) twice testified falsely on cross examination concerning threats by petitioner and a search warrant executed on McDowell's residence, in conflict with earlier statements to the prosecutor. Additionally, petitioner argues that the prosecutor improperly bolstered McDowell's testimony by asking a series of questions concerning McDowell's anti-terrorism activities on re-direct.  (Cv. Doc. #1, pp. 38-42; Cv. Doc. #13, pp. 15-17.)  Petitioner further asserts that prosecutorial misconduct permeated the entire atmosphere of the trial, denying him a fair trial.  (Cv. Doc. #1, p. 42; Cv. Doc. #13, p. 13).  Additionally, petitioner asserts that his attorney should have objected to the questions concerning McDowell's anti-terrorism activities on re-direct.  (Cv. Doc. #1, p. 40.)  The Court finds no merit to any of these claims.

"To establish prosecutorial misconduct for the use of false testimony," petitioner "must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently

learned was false testimony, and that the falsehood was material." United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010)(citations omitted).  The Court does not reach the element of materiality in this case, as the record does not support a finding of false testimony.

Petitioner asserts that McDowell testified falsely when he stated that petitioner's alleged threats towards him were "'documented' with the FBI". (Cv. Doc. #1, p. 37; Cv. Doc. #13, p. 15)(quoting Cr. Doc. #175, p. 649).  In support, petitioner contends that McDowell's testimony was in direct conflict with the prosecutor's earlier statement that the "FBI had no record of McDowell 'as either defendant, witness or victim.'" (Cv. Doc. #1, p. 37; Cv. Doc. #13, p. 15)(quoting Cr. Doc. #175, p. 563).

By setting these statements in apparent opposition petitioner misstates the record not once, but twice.  First, McDowell did not affirm that his report of petitioner's threats was documented with the FBI, but only expressed his opinion that "[i]t should be documented."  (Cr. Doc. #175, p. 649.)  Because McDowell's testimony did not purport to affirm the truth, neither is it susceptible to petitioner's allegation of falsehood.  Second, the prosecutor's statement that there was no record of McDowell as "a defendant, witness or a victim" (id., p. 563), was made in reference to the records of the U.S. Attorney's Office, and not to those of the FBI.  With respect to the FBI, on the contrary, the

-18-

prosecutor thought that the FBI indicated that they could "neither affirm nor deny" Mr. McDowell's explanation of events.   (Id.) Consequently, even if McDowell had affirmed that his report was documented with the FBI, nothing in the record suggests that government counsel had reason to believe that such testimony was false.

Additionally, petitioner asserts that McDowell testified falsely that "the search warrant executed by the FBI on his [McDowell's] home was initiated by a complaint he (McDowell) filed with the FBI." (Cr. Doc. #1, p. 37)(citation omitted).  Petitioner asserts that McDowell's testimony is in conflict with the government's representation that the "search warrant was based on a claim made by another victim of McDowell, not on a complaint filed by McDowell." (Id.)(citation omitted).

Petitioner has once again colored the record to construct an apparent incongruity.  The record establishes that McDowell never denied that a complaint filed by one of his victims formed part of the basis for the FBI's search warrant.  On the contrary, McDowell acknowledged the investor's complaint.  (Cr. Doc. #175, p. 625)("I suppose there was a complaint that was filed.";("I didn't know whether it was just totally that [the investor's complaint]."). Likewise, the government never denied that McDowell filed a complaint with the FBI, or that a complaint by McDowell was a basis for the execution of the search warrant.  On the contrary, when

-19-

discussing the grounds for the search warrant, the prosecutor implied the existence of an additional basis for its execution. (Id., p. 561)("The F.B.I. executed the search warrant . . . as a result of *basically* the loss of . . . money based on a claim made by another victim.")(emphasis added).

In sum, McDowell merely stated that he had filed a complaint with the FBI, while the government stated that an investor had done the same.  The two propositions are not mutually exclusive, and the execution of the search warrant need not have been based entirely on one complaint or the other.  Accordingly, as the record does not support a finding that McDowell provided false testimony, the Court finds that there was no prosecutorial misconduct in this regard.

Petitioner also asserts that the prosecutor improperly bolstered McDowell's testimony by confirming the existence of evidence not known to the jury.  Specifically, petitioner asserts that the prosecutor improperly vouched for McDowell's credibility when he acknowledged his awareness of circumstances that prevented McDowell from testifying further regarding his anti-terrorist activities with the FBI.  (Cv. Doc. #1, p. 38-40.)

"'Attempts to bolster a witness by vouching for his credibility are normally improper and error.'"  United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)(quoting United States v. Ellis, 547 F.2d 863, 869 (5th Cir. 1977)).  "The test for improper vouching is whether the jury could reasonably believe that the

prosecutor was indicating a personal belief in the witness' credibility." <u>Id.</u> at 377 (citation omitted). A jury might reasonably believe the prosecutor's indications "if the prosecutor . . . implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the testimony." <u>United States v. Eyster</u>, 948 F.2d 1196, 1206 (11th Cir. 1991)(citation omitted).

At no point in the anti-terrorist dialogue did the prosecutor indicate his personal belief in McDowell's credibility. The prosecutor merely confirmed that he was aware of circumstances which rendered McDowell "not at liberty" to elaborate further on his role in the tracing of terrorist funding. (Cr. Doc. #175, p. 655.) These circumstances, which involved McDowell's prior association with federal intelligence agencies, were made known to the Court before McDowell testified. (Cr. Doc. #175, pp. 561-71.) The Court finds that the prosecutor's acknowledgment of such circumstances did not support the veracity of McDowell's testimony, nor has petitioner made the requisite showing that, but for the prosecutor's remarks, "the outcome . . . would have been different." <u>Kennedy v. Dugger</u>, 933 F.2d 905, 914 (11th Cir. 1991)(quotation omitted). Furthermore, contrary to petitioner's argument (Cv. Doc. #1, p. 39), the Court finds that the prosecutor did not imply that petitioner was a terrorist  simply by

questioning McDowell about his anti-terrorist activity with the FBI.

Additionally, petitioner asserts that the prosecutor's improper remarks made during the opening and closing statements (Cv. Doc. #1, p. 41), in conjunction with the failure to correct false testimony and improper vouching, rendered prosecutorial misconduct so pervasive as to deprive petitioner of a fair trial. "This court will only reverse a conviction on the basis of prosecutorial misconduct if that misconduct is so pronounced and persistent as to permeate the entire atmosphere of the trial." United States v. Chirinos, 112 F.3d 1089, 1098 (11th Cir. 1997)(internal quotations and citations omitted). The Eleventh Circuit Court of Appeals found that the impropriety of the prosecutor's remarks during the opening and closing statements did not so permeate the trial as to warrant any relief. Pentz, 202 F. App'x at 415. Because the Court finds petitioner's additional allegations of prosecutorial misconduct are without merit, the grounds for relief remain inadequate, and no relief is warranted.

As for petitioner's claim of ineffective assistance of counsel, petitioner "cannot show prejudice in his defense counsel's failure to object to prosecutorial misconduct that, itself, does not warrant reversal." Land v. Allen, 573 F.3d 1211, 1220-21 (11th Cir. 2009). Accordingly, because the Court finds that petitioner "is not entitled to relief based on prosecutorial misconduct, we

likewise find that he is not entitled to relief on his claim that
defense counsel's failure to object to the prosecutor's statements
amounted to constitutionally ineffective assistance of counsel."
Id. at 1221.

**(11) Restriction on Cross Examination of Government Witness:**

Petitioner argues that while the district court ordered
disclosure of information about McDowell, his attorney was led to
understand by the government that the defense could not raise any
issue concerning a felony conviction that McDowell stated was a
ruse in his role as a National Security Agency (NSA) operative.
Defense counsel therefore made no mention of the felony conviction
or other disclosures that would have affected credibility.
Additionally, petitioner argues that on re-direct examination, the
prosecutor sought to mislead the jury regarding McDowell's true
relationship with the FBI.  Petitioner argues that the directive of
the prosecutor not to use information relating to the felony
conviction is tantamount to non-disclosure by the government, and
that there were other specific instances of misconduct by McDowell
that should have been presented as specific collateral impeachment.
(Cv. Doc. #1, pp. 42-44; Cv. Doc. #13, pp. 18-19.)

The record does not support that there was unwarranted
restriction of cross examination by the Court or misconduct by the
government.  Petitioner has provided no evidence to substantiate
his allegation that the government directed defense counsel not to

-23-

mention McDowell's felony conviction.  On the contrary, the record establishes that the Court approved of the disclosure of evidence regarding McDowell's arrest, prosecution, and felony conviction. (Cr. Doc. #175, p. 569.)  Additionally, petitioner has not shown prejudice resulting from his attorney's failure to raise the issue of McDowell's prior conviction.  The jury was already presented with reason to doubt McDowell's credibility, as it was made aware that McDowell was currently under investigation by the FBI, and that he was testifying pursuant to an immunity agreement. (Id., p. 625-26.)

Similarly, at redirect examination, the prosecutor said nothing to mislead the jury when questioning McDowell about the kind of work he did with the FBI.  (Cf. Cv. Doc. #1, p. 43.) Petitioner further claims that the government violated Giglio by not disclosing evidence of a civil suit previously filed against McDowell for fraud. (Id., p. 44.)  Petitioner has not established that the government was aware of this civil suit, much less that it suppressed evidence, directly or otherwise.  Additionally, petitioner asserts that the government possessed and failed to disclose other "documents," possibly from the FBI, that contradicted McDowell's testimony.  Petitioner's speculation as to these conjectured "documents," based on unsupported "information and belief," is frivolous and merits no discussion.

-24-

Finally, petitioner asserts that the government failed to disclose a newspaper article regarding McDowell's felony conviction by allegedly informing defense that the article could not be copied without causing damage to the original. (Cv. Doc. #13, p. 19.) The record reflects that the government disclosed the newspaper article to defense counsel. (Cr. Doc. #175, p. 570; Cv. Doc. #10, p. 24.) Defense counsel was satisfied with the disclosure and indicated that he was ready to proceed with the trial. (Cr. Doc. #175, p. 570.) Accordingly, the Court finds that petitioner's claims are without merit.

**(12) Unconstitutional Hearsay Admitted:**

Petitioner asserts that there was "unconstitutional admission of hearsay statements" at his trial under the guise of the co-conspirator exception to hearsay, thereby violating the confrontation clause. (Cv. Doc. #1, p. 44.) Petitioner argues that testimony of Catherine Frasier that Lauri Smith told her [Frasier] that the business had to be in her [Smith's] name because of petitioner's credit rating was not within the co-conspirator exception because it pre-dated the beginning of the alleged scheme. (Cv. Doc. #1, pp. 45-47; Cv. Doc. #13, p. 20.)

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay statements are "inadmissable unless they fall within one of

the exceptions enumerated in the Federal Rules of Evidence." United States v. Berkman, 2011 U.S. App. LEXIS 14242 (11th Cir. July 12, 2011)(citing United States v. Gari, 572 F.3d 1352, 1361 n.7 (11th Cir. 2009).

Under the coconspirator exception, "[a] statement is not hearsay if it is made by a coconspirator of a party during the course and in furtherance of the conspiracy." United States v. Smith, 350 F. App'x 320, 322-323 (11th Cir. 2009)(citing Fed. R. Evid. 801(d)(2)(E)).  The "improper admission of co-conspirator hearsay, like other Confrontation Clause errors, is subject to the harmless error rule," United States v. Cross, 928 F.2d 1030, 1052 (11th Cir. 1991), which "precludes conviction reversal based on '[a]ny error . . . that does not affect substantial rights.'" United States v. LaMonda, 384 F. App'x 944, 945 (11th Cir. 2010)(quoting Fed. R. Crim. P. 52(a)).

Petitioner claims that Frasier's testimony was used to prove the government's assertion that petitioner "made claims that he had bad credit in order to convince Smith to allow him to transfer WMBC to her; while [petitioner] still ran things behind the scenes." (Cv. Doc. #1, p. 45.)  Frasier only testified that the "business had to be in her [Smith's] name, something about [petitioner's] credit but she didn't go into any detail."  (Cr. Doc. #173, p. 9.) Frasier made no mention of whether petitioner had a credit problem, or whether his credit was good or bad.  Frasier's testimony lacks

an essential element of hearsay, as the mere mention of petitioner's credit in association with the ownership of the business, without more, does not support the truth of the matter asserted by the government.

Nevertheless, assuming, arguendo, that Frasier's testimony was inadmissable hearsay, the Court concludes that any error was harmless beyond a reasonable doubt, as the alleged hearsay testimony did not have a "substantial and injurious effect or influence in determining the jury's verdict." Cargill v. Turpin, 120 F.3d 1366, 1376 (11th Cir. 1997)(quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  The prosecution's case was strong apart from the peripheral theory of petitioner's credit scheme, and the "minds of an average jury would [not] have found the prosecution's case less persuasive if the erroneously admitted evidence had been excluded." United States v. Gari, 572 F.3d 1352, 1363 (11th Cir. 2009)(internal quotations and citations omitted).

After a thorough review of the record, and in light of the overwhelming evidence against petitioner in this case, the Court concludes with "fair assurance . . . that the judgment was not substantially swayed by the [alleged] error." Kotteakos v. United States, 328 U.S. 750, 765 (1946).  Accordingly, the Court need not decide whether the alleged hearsay was admitted in violation of petitioner's confrontation rights or whether it includes evidence

admissible under a hearsay exception.   <u>See</u> <u>Gari</u>, 572 F.3d at 1362-1363.

**(13) Failure to Prove Elements of Money Laundering:**

Petitioner asserts that his conviction was unconstitutional because the government failed to prove all the elements of the money laundering counts, specifically that he laundered "profits" as defined in <u>United States v. Santos</u>, 553 U.S. 507 (2008). (Cv. Doc. #1, p. 47; Cv. Doc. #13, pp. 21.)

The Eleventh Circuit has been unpersuaded by this argument. In <u>Santos</u>, a four-justice plurality concluded that, in the context of a defendant operating an illegal lottery, "proceeds" meant "profits." <u>Id.</u> at 2022-25.  The Eleventh Circuit has stated that the narrow ruling in <u>Santos</u>, at most, meant "that the gross receipts of an unlicensed gambling operation were not 'proceeds' under section 1956." <u>United States v. Jennings</u>, 599 F.3d 1241, 1252 (11th Cir. 2010).   In contexts other than an unlicensed gambling operation, the Eleventh Circuit has continued to apply the previous definition of "proceeds" to include "receipts as well as profits." <u>Id.</u>

**(14) Ineffective Assistance of Counsel:**

Petitioner argues that the failure to preserve and raise the <u>Santos</u> issue on direct appeal constituted ineffective assistance of counsel and violated his due process rights. (Cv. Doc. #1, p. 48.) Since the issue is without merit, there was no ineffective

assistance of counsel in failing to preserve or raise the issue on direct appeal.

**(15) Cumulative and Spill Over:**

Petitioner asserts that the cumulative affect of all the violations mandates reversal of his convictions. (Cv. Doc. #1, p. 49.)  The Court finds petitioner has not established any errors, and certainly no errors which either singly or in combination bring into question the validity of his convictions.

**(16) Ineffective Assistance of Counsel:**

Petitioner argues that he received ineffective assistance of counsel to the extent that trial counsel failed to preserve any and all of the issues he raises in his § 2255 motion and appellate counsel failed to raise any and all of these issues on direct appeal. (Cv. Doc. #13, p. 1.)  Having discussed the merits of the issues above, the Court finds no ineffective assistance of counsel for failing to preserve or raise any of the issues.  None have merit.

Accordingly, it is now

**ORDERED:**

1.  Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, and to Correct, Sentence By a Person in Federal Custody (Cv. Doc. #1) is **DENIED** as to all claims for the reasons set forth above.

2.   The Clerk of the Court shall enter judgment accordingly and close the civil file.   The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE **DENIED.**   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability (COA).   Id.   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   Id. at § 2253(c)(2).   To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004)(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"   Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).   Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Fort Myers, Florida, this __29th__ day of July, 2011.

JOHN E. STEELE
United States District Judge

-30-

Copies:
Counsel of record
Jack Pentz